UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| **MICHELLE R. JONES,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO. 1:24-cv-00252-SLC |
| | ) |
| **COMMISSIONER OF SOCIAL** | ) |
| **SECURITY**, *sued as Leland Dudek,* | ) |
| *Acting Commissioner of the Social* | ) |
| *Security Administration*,[1] | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff Michelle R. Jones appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying her application under the Social Security Act (the "Act") for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (ECF 1). For the following reasons, the Commissioner's decision will be AFFIRMED.

## I. FACTUAL AND PROCEDURAL HISTORY

Jones applied for DIB and SSI in August 2020, alleging disability as of August 31, 2019. (ECF 9 Administrative Record ("AR") 25, 208, 215).[2] Jones's claim was denied initially and upon reconsideration. (AR 25). On October 27, 2021, administrative law judge ("ALJ") Genevieve Adamo conducted an administrative hearing (AR 41-62), and on December 14, 2021,

---

[1] Leland Dudek became the Acting Commissioner of Social Security on February 16, 2025, and thus, pursuant to Federal Rule of Civil Procedure 25(d), he is automatically substituted for Martin O'Malley as the defendant in this suit. *See Michael A. v. Dudek*, No. 1:22-cv-5422, 2025 WL 552464, at *1 n.1 (N.D. Ill. Feb. 19, 2025).

[2] The AR page numbers cited herein correspond to the ECF-generated page numbers displayed at the top center of the screen when the AR is open in ECF, rather than the page numbers printed in the lower right corner of each page.

rendered an unfavorable decision to Jones, concluding that she was not disabled because she could perform a significant number of light-exertional jobs in the national economy despite the limitations caused by her impairments (AR 25-35). The Appeals Council denied Jones's request for review (AR 9-15), and on September 2, 2022, Jones appealed the ALJ's decision to the District Court (AR 632-36). On May 23, 2023, the Court reversed the ALJ's decision and remanded the case. (AR 693-98). Once remanded, the case was consolidated with subsequent new applications for DIB and SSI that Jones had filed in July 2022. (AR 702; *see* AR 863, 873). On December 7, 2023, ALJ Meredith Jacques conducted an administrative hearing (AR 571-605), and on February 22, 2024, that ALJ also rendered Jones an unfavorable decision (AR 536-60). The ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

On June 20, 2024, Jones filed a complaint in this Court appealing the Commissioner's final decision. (ECF 1). In her opening brief, Jones argues that the ALJ did not create a logical bridge from the evidence of record—in particular, the physical therapy notes and evidence of her cervical impairments, and her exertional capacity—to the assigned residual functional capacity ("RFC"). (*See* ECF 18 at 8-14).

On the date of the Commissioner's final decision, Jones was forty-nine years old (AR 208, 560); had an eighth or ninth grade education, with some special education classes (AR 236, 577); and had past relevant work as a cashier II (AR 59, 557; *see also* AR 242). Jones alleges she suffers from the following conditions: cervical deformities, including loss of lordosis, moderate disc narrowing at C5-6 with joint spurring, severe foraminal stenosis at C6-7, mild foraminal narrowing at C5-6; severe persistent depressive disorder with anxious distress; migraines with aura; gastroesophageal reflux disease (GERD); neuropathy; post-traumatic stress disorder

(PTSD); anxiety; polyarthralgia; class 3 severe obesity; psychophysiologic insomnia; bilateral knee lateral pressure in flexion with patellofemoral syndrome; and moderately severe obstructive sleep apnea. (ECF 18 at 5-6).

## II. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed "only if [it is] not supported by substantial evidence or if the Commissioner applied an erroneous legal standard." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (citation omitted).

To determine if substantial evidence exists, the Court "review[s] the entire administrative record, but do[es] not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Id.* (collecting cases). "Rather, if the findings of the Commissioner . . . are supported by substantial evidence, they are conclusive." *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted). "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

### III. ANALYSIS

*A. The Law*

Under the Act, a claimant seeking DIB or SSI must establish that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see also id.* §§ 416(i)(1), 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: (1) whether the claimant is currently unemployed in substantial gainful activity, (2) whether she has a severe impairment, (3) whether her impairment is one that the Commissioner considers conclusively disabling, (4) whether she is incapable of performing her past relevant work, and (5) whether she is incapable of performing any work in the national economy. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001); *see also* 20 C.F.R. §§ 404.1520, 416.920.[3] "[A]n affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled." *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) (citation omitted). "A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Id.* (citation omitted). The burden of proof lies with the claimant at every step except the fifth, where it shifts to the

---

[3] Before performing steps four and five, the ALJ must determine the claimant's RFC or what tasks she can do despite her limitations. 20 C.F.R §§ 404.1520(e), 404.1545(a), 416.920(e), 416.945(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. *Id.* §§ 404.1520(e), 416.920(e).

Commissioner. *See Clifford*, 227 F.3d at 868.

*B. The Commissioner's Final Decision*

In the Commissioner's final decision, the ALJ found as a threshold matter that Jones was last insured for DIB on September 30, 2023. (AR 539).[4] At step one of the five-step sequential analysis, the ALJ determined that Jones had worked after her alleged onset date of August 31, 2019, but that such work did not rise to the level of substantial gainful activity. (AR 540). At step two, the ALJ found that Jones had the following severe impairments: anxiety disorder, depression/severe early onset dysthymic disorder with intermittent major depressive episodes, PTSD, obesity, neuropathy, polyarthralgia, migraine, obstructive sleep apnea, cervical degenerative disc disease with radiculopathy, and bilateral knee patellofemoral syndrome. (AR 542). The ALJ further noted that Jones's hypertension, GERD, restless leg syndrome, and remote history of carpal tunnel syndrome were non-severe impairments. (AR 540-41). At step three, the ALJ concluded that Jones did not have an impairment or combination of impairments severe enough to meet or equal a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 542).

The ALJ assigned Jones the following RFC:

> [T]he claimant has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except never climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs; occasionally balance . . . ; occasionally stoop, kneel, crouch, and crawl; avoid concentrated exposure to vibration; avoid concentrated exposure to hazards, such as unprotected heights and unguarded moving mechanical parts; frequent handling, fingering, and feeling, bilaterally; limited to working in an environment with no more than a moderate noise level . . . ; understand, remember, and carry out simple instructions; cannot perform work requiring a specific production rate such as assembly line work or work that requires hourly quotas; deal with frequent changes in a routine work setting; and

---

[4] Therefore, for purposes of her DIB claim, Jones must establish that she was disabled as of September 30, 2023, her date last insured. *See Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir. 1997) (explaining that a claimant must establish that he was disabled as of his date last insured in order to recover DIB).

> occasional contact with supervisors, coworkers, and the public, but contact with supervisors still includes what is necessary for general instruction, task completion, or training.

(AR 549).

The ALJ determined at step four that given the foregoing RFC, Jones could not perform her past relevant work. (AR 557). However, at step five the ALJ found that a hypothetical individual of Jones's age, education, experience, and RFC could perform a significant number of unskilled, light-exertional jobs in the national economy, including collator operator, mail clerk, and routing clerk. (AR 558). The ALJ further noted the vocational expert's testimony that if Jones were limited in the RFC to sedentary work, rather than light work, she could still perform 80,000 to 100,000 jobs, including the jobs of document preparer/microfilmer, polisher, and tube operator, given her age, education, and experience. (AR 558; *see* AR 599-600). Accordingly, Jones's applications for DIB and SSI were denied. (AR 559-560).

### C. The Physical Therapy Records and Cervical Impairment Evidence

Jones first argues that the ALJ failed to build a logical bridge from the physical therapy records and cervical impairment evidence, to an RFC for light exertional work. (ECF 18 at 8-9). Specifically, Jones contends that the ALJ erred by failing to consider a February 2020 physical therapy evaluation that included "[f]unctional limitations" of prolonged standing, turning the head, looking up, looking over shoulders, and difficulty lifting and holding objects. (*Id.* at 9). Jones further cites the physical therapy notes from March and May 2020, where she complained of some dizziness with neck range of motion, numbness in her arms when doing her hair, and fatigue in her grip strength. (*Id.* at 9-10). Further, Jones faults the ALJ for failing to discuss the functional outcome finding in the June 2020 physical therapy note of a 60 percent impairment in the lower extremity functional scale and a 38 percent impairment on the neck pain and disability

index. (*Id.* at 10; *see* AR 356-57).

"An ALJ need not address every piece of evidence or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024) (citations omitted). Rather, an ALJ is "subject to only the most minimal of articulation requirements." *Id.* All that is required is that the ALJ "provide an explanation for how the evidence leads to their conclusions that is sufficient to allow . . . a reviewing court[] to assess the validity of the agency's ultimate findings and afford [the claimant] meaningful judicial review." *Id.* (citations and internal quotation marks omitted). In shorthand terms, an ALJ "needs to provide a logical bridge from the evidence to [her] conclusion." *Id.* (citation and internal quotation marks omitted).

Having said that, "[t]he ALJ must evaluate the record fairly. Thus, although the ALJ need not discuss every piece of evidence in the record, the ALJ may not ignore an entire line of evidence that is contrary to the ruling." *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003) (citations omitted); *see also John B. v. Saul*, No. 2:18-cv-00223-JVB-JEM, 2019 WL 4233744, at *2 (N.D. Ind. Sept. 5, 2019) (discussing examples that "demonstrate[d] . . . the ALJ did not impermissibly rely on a single line of evidence"). "If the ALJ were to ignore an entire line of evidence, that would fall below the minimal level of articulation required." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (citation omitted).

To begin, Jones's assertion that the ALJ did not consider or acknowledge the February 2020 physical therapy evaluation is incorrect. The ALJ indeed noted that Jones began physical therapy on February 7, 2020, due to complaints of chronic neck pain, and that she attended sixteen sessions thereafter to June 24, 2020. (AR 551-52). While the ALJ did not discuss the February 2020 evaluation in detail, she was not required to. "[T]he ALJ must generally consider and

explicitly weigh each *medical opinion* of record, [but] the ALJ is not obligated to summarize every single medical record in the administrative transcript." *Giles v. Colvin*, No. 1:14-CV-00684 (MAT), 2017 WL 2533191, at *4 (W.D.N.Y. June 12, 2017) (rejecting the claimant's argument that the ALJ impermissibly ignored physical therapy notes of record where the "[ALJ's] reference to the physical therapy treatment notes indicate that he considered the records in his overall evaluation of disability" (citation and footnote omitted)).

Jones contends that the February 2020 evaluation was a "medical opinion" and as such, the ALJ had to evaluate its persuasiveness and articulate her findings in writing. (ECF 18 at 9); *see Jones v. Dudek*, 134 F.4th 991, 993-94 (7th Cir. 2025) ("[A]n ALJ must evaluate the persuasiveness of the opinion for its supportability and consistency[,]" and then "articulate and explain" how he considered those factors in the decision. (citations and internal quotation marks omitted)); *see also* 20 C.F.R. §§ 404.1520c, 416.920c. But the "[f]unctional limitations" that Jones contends the ALJ should have discussed—difficulty with prolonged standing, turning her hand, looking up, moving her neck, looking over her shoulder, and lifting and holding objects (ECF 18 at 9)—were actually Jones's subjective complaints to the physical therapist, rather than limitations assigned by the therapist. (*See* AR 399); *see also Jozefyk v. Saul*, No. 19-CV-1606, 2020 WL 5876063, at *6 (E.D. Wis. Oct 2, 2020) (stating that a claimant's self-reported abilities to a medical provider "were entitled to no greater weight than any other statement by [the claimant]," commenting that the claimant "might as well have filled out the form himself"). In any event, these purported limitations in the February 2020 evaluation are not a medical opinion because they do not state what Jones "can still do." *Jones*, 134 F.4th at 997 (explaining that the relevant regulations "expressly define[] a medical opinion to include statements about what the claimant 'can still do'" (quoting 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2))). Therefore, the

February 2020 physical therapy evaluation is not a "medical opinion" under the relevant regulations, 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2), but rather constitutes "other medical evidence[,]" *id.* at §§ 404.1513(a)(3), 416.913(a)(3). Accordingly, the law simply requires "that the ALJ sufficiently articulate [her] assessment of the evidence to assure us that the ALJ considered the important evidence . . . and to enable us to trace the path of the ALJ's reasoning." *Carlson*, 999 F.2d at 181 (second alteration in original) (citation, internal quotation marks, and brackets omitted).

Here, the ALJ penned several paragraphs summarizing the March, May, and June 2020 physical therapy notes, and in doing so, noted the changes from the February 2020 initial evaluation. (AR 550-52). Jones contends that the ALJ "cherry picked" these physical therapy notes, citing only the findings that support the ALJ's outcome of non-disability and ignoring those that contradict it. (ECF 24 at 2-4; *see* ECF 18 at 9-13). For example, Jones faults the ALJ for omitting her complaint in the March physical therapy note that her arms go numb when doing her hair, and her statements in the March and May notes that she had some migraines and some dizziness with cervical rotation and extension. (ECF 18 at 9-10; *see, e.g.*, AR 372-73, 384-86). Jones also faults the ALJ for omitting her self-report in a June physical therapy report noting pain in her knees; the therapist's documentation of a 60 percent impairment on the lower extremity functional scale and a 38 percent impairment on the neck pain and disability index; that she was still having problems with cervical mobility, upper extremity strength, grip strength, and reduced function of her neck; and that she had not met all long-term therapy goals. (ECF 18 at 10; *see* AR 355, 357-58).

Contrary to Jones's assertion, the ALJ summarized the physical therapy records fairly, noting that during some of the visits Jones complained of migraines and her hands going numb.

9

(AR 551-52). The ALJ further acknowledged that the last physical therapy note in June 2020 reflected that Jones still had limitations in cervical mobility, upper extremity strength, and grip strength, and that she had not met all her long-term goals. (AR 552; *see* AR 357-58). Yet, the ALJ also observed that Jones did progress after 16 physical therapy sessions, reporting less neck pain, fewer headaches and migraines, and her bilateral shoulder strength improved from "3" in the February evaluation to "4" by June 2020. (AR 551-52).[5]

Furthermore, the ALJ did not consider the physical therapy records in a vacuum. The ALJ observed that while there were no other physical therapy records in 2020, an October 2020 disability examination by Brenda Vazquez, M.D., reflected "largely normal functioning[,]" including 5/5 upper extremity and grip strength, normal hand dexterity, and full range of motion in both hands, shoulders, and the cervical spine. (AR 552 (citing AR 483-494)). Jones challenges the ALJ's reliance on Dr. Vazquez's evaluation, stating that it further reflected that she could lift just 5 pounds with each arm and walk one to two blocks. (ECF 24 at 3 (citing AR 476)). But in doing so, Jones ignores that Dr. Vazquez further concluded that Jones could stand and walk for at least two hours in an eight-hour workday and lift and carry 10 pounds frequently and over 10 pounds occasionally. (AR 489).

The ALJ also considered that Jones's migraines improved not only through physical therapy, but also through Aimovig injections, which Jones reported were working well in January 2021. (AR 552 (citing AR 979)). The ALJ further observed that a physical examination by Maria Snyder, M.D., in November 2022 again showed largely normal findings—no pain,

---

[5] Jones seemingly disputes that she progressed in physical therapy, pointing to her primary care provider's comment that she "failed" physical therapy. (ECF 24 at 3 (citing AR 989, 992)). However, this notation in her primary care provider's note seems to stem from the history and physical section, suggesting it was per Jones's report. (*See* AR 989, 992).

swelling, or stiffness; 5/5 bilateral grip and upper extremity strength; normal sensation; and normal hand dexterity—even without Jones engaging in continuous treatment for more than a year. (*Id.* (citing AR 1115-126)). Like Dr. Vazquez, Dr. Snyder concluded that Jones could stand and walk at least two hours in an eight-hour workday and could lift 10 pounds frequently and over 10 pounds occasionally. (AR 1121). The ALJ also considered that despite Jones's testimony at the hearing that her arms get really tired, she has numbness in her fingers, and she drops things, in August 2023 Jones described her hobbies as sewing, crafts, baking, canning, and playing games on her phone—all activities that involve significant hand use. (AR 552; *see* AR 583, 594, 1233). The ALJ particularly noted that Jones's report of these hobbies followed an extended period of not participating in any regular medical care for neck pain, radiculopathy, hand symptoms, or migraines. (AR 552).

Jones further faults the ALJ for failing to address the 60 percent impairment rating on the lower extremity functional scale, and the 38 percent impairment rating on the neck pain and disability index, reflected in her June 24, 2020, physical therapy note. (ECF 18 at 11; *see* AR 357). Jones contends the ALJ never explains "how a 60% functional impairment on lower extremities equates [to] the ability to stand/walk six hours in an eight-hour work day, as required by 'light' work." (ECF 18 at 11-12). But the physical therapist did not explain what these percentages mean or how the therapist arrived at these ratings. And significantly, J Sands, M.D., and Joshua Eskonen, D.O., state agency physicians, reviewed Jones's record in October 2020 and February 2021, respectively, including the June 24, 2020, physical therapy note, and concluded that Jones could stand or walk about six hours in an eight-hour workday. (*See* AR 72, 75, 88, 93, 103, 110-11, 657-58). Two other state agency physicians, J.V. Corcoran, M.D., and Shayne Small, M.D., concluded the same in November 2022 and February 2023, respectively.

11

(AR 668-69, 679-80). "It is appropriate for an ALJ to rely on the opinions of physicians and psychologists who are also experts in social security disability evaluation." *Flener ex rel. Flener v. Barnhart*, 361 F.3d 442, 448 (7th Cir. 2004) (citation omitted); *see Thomas S. v. Kijakazi*, No. 1:22 cv 270, 2023 WL 2783196, at *5 (N.D. Ind. Apr. 5, 2023) (noting that the state agency doctors' review of the longitudinal record "strengthens the weight of their conclusions" (quoting *Flener ex rel. Flener*, 361 F.3d at 448)). In any event, the ALJ alternatively observed that even if Jones were limited to sedentary work, she could still perform 80,000 to 100,000 jobs in the national economy. (AR 558; *see* AR 599-600). "No principle of administrative law or common sense requires a court to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) (collecting cases).

Finally, Jones argues that the ALJ applied an incorrect standard when commenting several times that Jones's conditions did not "significantly worsen" over time. (ECF 18 at 12-13). As Jones see it, "[h]er impairments have been disabling since 2019 . . . . [and] there is no requirement that the evidence should prove [she] was worsening from 2019 until the time of the opinion . . . ." (*Id.* at 13). However, there is no evidence that the ALJ applied an improper standard here. The ALJ generally considered that Jones complained of increased neck pain and other symptoms in September 2023, but that various exam findings were normal, including upper extremity sensation, grip strength, and hand and wrist extension. (AR 552). And although Jones continued to complain of pain in her neck, back, and arms in December 2023, the ALJ again noted that there were no associated worsening clinical findings. (AR 553). These were fair observations by the ALJ, and Jones's argument "amounts to nothing more than a dislike of the ALJ's phraseology." *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004).

In sum, the ALJ reasonably considered the physical therapy notes and cervical impairment evidence of record, did not cherry-pick such evidence or ignore an entire line of evidence contrary to her conclusion, and minimally articulated her reasoning about this evidence. Further, the ALJ's assignment of an RFC for light work is supported by the medical opinions of Dr. Vazquez, Dr. Snyder, Dr. Corcoran, and Dr. Small. Consequently, Jones's first argument does not warrant a remand of the ALJ's decision.

### D. The Exertional Impairment Evidence

In her second argument, Jones asserts that the ALJ "cherry-picked" the record when considering Jones's exertional capacity. (ECF 18 at 13). The paragraph in the ALJ's decision that Jones focuses on is as follows:

> [A]s the undersigned assessed the claimant's exertional capacity to perform work activities, the undersigned considered the claimant's July 2023 sleep study that revealed moderately severe obstructive sleep apnea hypopnea. However, there is no documentation of significant daytime fatigue during any consecutive 12-month period since the alleged onset date. Instead, over multiple examinations before and after the alleged onset date, from October 2018 through September 2023, the claimant was alert.

(AR 553 (internal citations omitted)).

Jones asserts that the ALJ erred by failing to consider that in November 2022 Dr. Snyder assigned her a "class 2" rating as defined by the New York Heart Association, meaning "Slight limitation of activity (fatigue/palpation/ dyspnea/angina). No symptoms at rest." (ECF 18 at 13 (citation omitted); *see* AR 553, 1119). Jones argues this oversight is particularly notable given that the ALJ found Dr. Synder's opinion "persuasive[.]" (ECF 18 at 14; *see* AR 553). Jones further contends that the fact she was described as "alert" by various providers describes her mental state, not her exertional capacity. (ECF 18 at 14). She also points to a physical therapy record which showed normal grip strength on her first attempt, but "significant fatigue" with the

13

second and third attempts. (ECF 18 at 14 (quoting AR 380)).

But as the Commissioner responds, Jones had a normal heart and pulmonary exam by Dr. Snyder that documented normal stamina. (ECF 23 at 14 (citing AR 1118-19, 1121)). And despite the "class 2" rating, Dr. Snyder opined that Jones could stand and walk at least two hours in an eight-hour workday, and lift 10 pounds frequently and more than 10 pounds occasionally. (*See* AR 1121).[6] Furthermore, the ALJ's comment about Jones's alertness was made in the context of assessing her sleep apnea symptoms, pointing out that she did not display signs of daytime sleepiness or fatigue to providers. (*See* AR 553-54); *see also Buckhanon ex rel. J.H. v. Astrue*, 368 F. App'x 674, 678-69 (7th Cir. 2010) (stating that the court reads an ALJ's decision "as a whole and with common sense"). In any event, as already explained, the ALJ alternatively found that even if Jones were limited to sedentary work, rather than light work, she could still perform a 80,000 to 100,000 jobs in the national economy. (AR 558; *see* AR 599-600); *see generally Milhem v. Kijakazi*, 52 F.4th 688, 696-97 (7th Cir. 2022) (concluding that 89,000 jobs is a significant number of jobs in the national economy (collecting cases)).

To reiterate, an ALJ need only minimally articulate her consideration of the evidence. "By 'minimal level of articulation' we mean just that—enough to show that the ALJ considered the evidence the law requires [her] to consider. A more extensive requirement sacrifices on the altar of perfectionism the claims of other people stuck in the queue." *Stephens v. Heckler*, 766 F.2d 284, 288 (7th Cir. 1985). Here, the ALJ minimally articulated her consideration of Dr. Snyder's opinion, and the "class 2" exertional rating contained therein does not rise to an entire line of evidence contrary to the ALJ's outcome. Consequently, the Commissioner's final decision will

---

[6] Jones also ignores that Dr. Vazquez assigned her a "class 0" rating in October 2020, meaning "no heart disease known[.]" (AR 487).

be affirmed.

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's decision is AFFIRMED. The Clerk is DIRECTED to enter a judgment in favor of the Commissioner and against Jones.

SO ORDERED.

Entered this 21st day of May 2025.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge
